UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————

SANDRA W. BEAUCHAMP,
individually and on behalf of a class,

                              Plaintiff,

        v.

FINANCIAL RECOVERY SERVICES, INC.,

                            Defendant.

—————————————————————————

Case No. 10-cv-4864 (SCR)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 12(B)(6)**

1328170_1

# TABLE OF CONTENTS

Page

Table of Authorities .......................................... 3

Introduction .................................................. 5

Procedural Posture ............................................ 5

Facts ......................................................... 5

Legal Argument ................................................ 6

   I.  Legal Standard ......................................... 6

      A.  FDCPA Standard ..................................... 8

      B.  FDCPA Sections ..................................... 8

  II.  FRS Did Not Violate the FDCPA. ........................ 9

      A.  FRS' Letter Set Forth The Amount Of The Debt. ...... 9

      B.  FRS' Letter Is Not Deceptive Or Misleading. ........ 12

      C.  Plaintiff's Claim Is The Result "Of An Ingenious Misreading." ... 12

Conclusion .................................................... 15

## TABLE OF AUTHORITIES

Page

CASES:

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)   6

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995)   7

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)   7

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)   7, 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)   7, 8

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126 (2d Cir. 2007)   7

*Gavish v. Revlon, Inc.*, No. 00-cv-7291 (SHS), 2004 WL 2210269   7
(S.D.N.Y. Sept. 30, 2004)

*Kropelnicki v. Siegel*, 290 F.3d 127 (2d Cir. 2001)   8

*Turner v. Asset Acceptance*, 302 F. Supp. 2d 56 (E.D.N.Y. 2004)   8

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)   8

*McStay v. I.C. System, Inc.*, 308 F.3d 188 (2d Cir. 2002)   8

*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2003)   8

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*,   9, 10, 11
214 F. 3d 872 (7th Cir. 2000)

*Weiss v. Zwicker & Associates, P.C.*, 664 F. Supp. 2d 214 (E.D.N.Y. 2009)   11, 12

*White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000)   12

*Taylor v. Cavalry Investment, L.L.C.*, 365 F.3d 572 (7th Cir. 2004)   12

*Olson v. Risk Management Alternatives, Inc.*, 366 F.3d 509 (7th Cir. 2004)   12

*Dewey v. Associated Collectors, Inc.*, 927 F. Supp. 1172 (W.D. Wis. 1996)   13

*Durkin v. Equifax Check Servs.*, 406 F.3d 410 (7th Cir. 2005)   13

*Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285 (7th Cir. 2005)   14

*Jacobson v. Healthcare Financial Servs., Inc.*, 434 F. Supp. 2d 133      14
(E.D.N.Y. 2006)

*Federal Home Loan Mortgage Corp. v. Lerner, Sampson, Rothfuss, L.P.A.*,      14
503 F.3d 504 (6th Cir. 2007)

STATUTES:

15 U.S.C. § 1692      6, 8-9, 10,
     12, 13

Fed. R. Civ. P. 12      6

Fed. R. Civ. P. 8      7

## INTRODUCTION

Defendant Financial Recovery Services, Inc. ("FRS") respectfully submits this memorandum in support of its motion to dismiss. The claims set forth by the putative class action Amended Complaint filed by Plaintiff Sandra W. Beauchamp ("Plaintiff") are completely without merit and are the apparent result of a disingenuous reading of the collection letter upon which the Amended Complaint is based.

## PROCEDURAL POSTURE

On June 22, 2010, Plaintiff filed this matter. [Docket No. 1.] On August 11, 2010, the Court approved an extension of time via stipulation to and through August 23, 2010. [Docket No. 4.] The extension was later increased to August 25, 2010. [Docket No. 5.] On August 23, 2010, FRS' counsel advised Plaintiff's counsel that FRS intended to proceed with a motion to dismiss. [Docket No. 8.] On August 24, 2010, in an attempt to thwart the motion to dismiss, Plaintiff filed an Amended Complaint. [Docket No. 9.]

## FACTS[1]

Prior to April 26, 2010, Plaintiff incurred a debt to HSBC and went into default and the debt was placed with FRS for collections. Pl. Am. Compl. ¶¶ 11-13, 16. On or about April 26, 2010, FRS mailed, and Plaintiff received, a collection letter (the "Letter").[2] Pl. Am. Compl. ¶ 19 and Ex. A. The Letter indicates at its top "Balance: $567.30" and further sets forth that:

---

[1]    For purposes of this motion only, FRS accepts Plaintiff's version of the facts, while reserving its right to refute the same should this matter not be dismissed.

[2]    Confusingly, Plaintiff asserts that the Letter was mailed on 4/28/10 and was dated 4/28/10, but refers to the Letter as the "4/26/10 Letter," despite the fact that the Letter is clearly dated 4/26/10. *See* Pl. Am. Compl. Ex. A and Pl. Compl. Ex. A.

> AS OF THE DATE OF THIS LETTER, YOU OWE $567.30.
> INTEREST, LATE CHARGES AND OTHER CHARGES MAY
> OR MAY NOT BE APPLICABLE TO THIS ACCOUNT.   IF
> SOME OR ALL OF THESE ARE APPLICABLE TO YOUR
> ACCOUNT, THEY MAY VARY FROM DAY TO DAY AND
> THUS THE AMOUNT DUE ON THE DAY YOU PAY MAY BE
> GREATER.   HENCE, IF YOU PAY THE AMOUNT SHOWN
> ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER
> WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL
> INFORM YOU BEFORE DEPOSITING THE CHECK FOR
> COLLECTION. [FOR FURTHER INFORMATION, WRITE THE
> UNDERSIGNED OR CALL 1-866-522-9390.]

*Id.* ¶ 24-25 and Ex. A (Defendant notes that Plaintiff's Amended Complaint omitted the bracketing language included above).

Plaintiff asserts, "on information and belief", that (1) FRS does not add interest, late charges, or other charges to debts it seeks to collect, (2) FRS is not permitted to add any late charges or other charges, (3) FRS will send subsequent letters offering substantial discounts if the debt is not paid after receipt of the first letter, and (4) FRS does not try to collect additional amounts if the debtor pays the balance initially demanded by FRS.  Pl. Am. Compl. ¶¶ 26-31, 34. Thus, Plaintiff asserts that the Letter is "materially false, deceptive and misleading" because it falsely suggests that the debt may increase daily, states that additional amounts may be owing after payment is tendered, and falsely states that FRS will contact the consumer to collect additional amounts. *Id.* ¶¶ 32, 33, and 35.

Accordingly, Plaintiff asserts that FRS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, e (5), e(10), and g(a)(1). *Id.* ¶ 57.

## **LEGAL ARGUMENT**

## I.    **LEGAL STANDARD**

On a motion to dismiss pursuant to Rule 12, all factual allegations are accepted as true, and all inferences are drawn in favor of the pleader.  *Mills v. Polar Molecular Corp.*, 12 F.3d

1170, 1174 (2d Cir. 1993).   The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)).   However, while the pleading standard set forth in Rule 8 of the F. R. Civ. P. is a liberal one,

> the pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers labels and conclusion or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted). Thus, a complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In meeting this "plausibility standard," the plaintiff must demonstrate more than a "sheer possibility" of unlawful action; pleading facts that are "'merely consistent with' a defendant's liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557); *see also Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) ("Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice.   To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (internal citations and quotation marks omitted)); *Gavish v. Revlon, Inc.*, No. 00-cv-7291 (SHS), 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss.").   The factual allegations of a complaint must be enough "to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555. Legal conclusions "couched as factual allegations" are not accepted as true. *Iqbal*, 129 S.Ct. at 1950.

### A.     FDCPA Standard

Courts within the Second Circuit use the least sophisticated consumer standard to determine if the FDCPA has been violated. *Kropelnicki v. Siegel*, 290 F.3d 127 (2d Cir. 2001)); *see also Turner v. Asset Acceptance*, 302 F.Supp.2d 56, 58 (E.D.N.Y. 2004) (*citing Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). "The purpose of this standard is two-fold: (1) [to] ensure the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) [to] protect debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* (internal quotation marks omitted).

However, "the least sophisticated consumer standard incorporates a 'concept of reasonableness' that is presumed to guide even the most naive debtor." *McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir. 2002) (*citing Clomon* 988 F.2d at 1319 (2d Cir. 1993)). Moreover, "even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon*, 988 F.2d at 1319.

Whether or not a collection letter violates the FDCPA is a question of law. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2003) (upholding the district court's finding that the letter did not violate 15 U.S.C. §§ 1692e or 1692g as a matter of law).

### B.     FDCPA Sections

Plaintiff asserts violations of the FDCPA, specifically 15 U.S.C. §§ 1692e, e(5), e(10), and g(a)(1), which provide the following:

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any

debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*****

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

*****

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e(5), (10).

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt.

15 U.S.C. § 1692g(a)(1).

## II.     FRS DID NOT VIOLATE THE FDCPA.

As set forth above, Plaintiff alleges that the language in FRS' letter violates the FDCPA because it is deceptive and fails to set forth the amount of the debt, thus violating 15 U.S.C. § 1692e and e(10). Plaintiff also asserts that FRS threatened to take an action that was not intended to be taken in violation of 15 U.S.C. § 1692e(5). Also, Plaintiff asserts that FRS failed to provide him with the amount of the debt, as required by 15 U.S.C. § 1692g(a)(1). However, it is clear that FRS complied with the FDCPA and Plaintiff's claims must be dismissed.

### A.     FRS' Letter Set Forth The Amount Of The Debt.

Plaintiff maintains that FRS' letter failed to set forth the amount of the debt and thus violated 15 U.S.C. § 1692g. In *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F. 3d 872 (7th Cir. 2000), the Seventh Circuit considered a similar claim brought

under Section 1692g.  As a result, the Seventh Circuit devised "safe harbor" language that it deemed to comply with the FDCPA.  *Id.*  Specifically, the Seventh Circuit held that the following language it crafted would not violate the FDCPA and would adequately set forth the amount of the debt when the amount was subject to change:

> As of the date of this letter, you owe $\_\_\_ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  For further information, write the undersigned or call 1-800- [phone number].

*Id.*

The language used by FRS is based upon and nearly identical to that approved as safe harbor language by the Seventh Circuit in *Miller*.  Below, again, is the language used by FRS, with the exception that the bracketed and underlined language has been inserted to show the similarities to that recommended in *Miller*.

> **As of the date of this letter, you owe $567.30.  [*Because of*] Interest, late charges and other charges** may or may not be applicable to this account.  If some or all of these are applicable to your account, they [*that*] **may vary from day to day and thus the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  For further information, write the undersigned or call 1-866-522-9390.**

The bolded language is language is the language used by FRS that is taken directly from *Miller*. Thus, the bolded language with the bracketed, underlined language is identical to the *Miller* language.  Accordingly, the only difference between FRS' language and the language in *Miller* is the omission of the three bracketed words and the inclusion of "may or may not be applicable to this account.  If some or all of these are applicable to your account, they".  The *Miller* court

stated that "[n]o reasonable person could conclude that the statement that we have drafted does not inform the debtor of the amount due." *Miller*, 214 F.3d at 876.[3]

Moreover, Plaintiff's Complaint has been crafted in an attempt to defeat a motion to dismiss, by asserting that "on information and belief," (1) FRS does not add interest, late charges, or other charges to debts it seeks to collect, (2) FRS is not permitted to add any late charges or other charges, (3) FRS will send subsequent letters offering substantial discounts if the debt is not paid after receipt of the first letter, and (4) FRS does not try to collect additional amounts if the debtor pays the balance initially demanded by FRS.  Pl. Am. Compl. ¶¶ 26-31, 34. However, the Letter states that it may take certain actions, not that it will.  Indeed, the safe-harbor language from *Miller* utilizes the word "may" in three instances: "…that **may** vary from day to day, the amount due on the day you pay **may** be greater.  Hence, if you pay the amount shown above, an adjustment **may** be necessary after we receive your check…."  Thus, whether or not FRS adds interest, late fees or other charges, or seeks additional amounts is immaterial and the Letter complies with the FDCPA.

---

[3]   In Plaintiff's original Complaint, Plaintiff cited to *Weiss v. Zwicker & Associates, P.C.*, 664 F. Supp. 2d 214 (E.D.N.Y. 2009), wherein Judge Spatt considered the following language that was sent in a debt collector's initial letter:

> [a]s of the date of this letter, the balance on your account is $30,982.09.  **Your balance may** include additional charges including delinquency charges, as applied at the direction of American Express, if said charges are permissible in accordance with the terms of your agreement.

*Weiss*, 664 F. Supp 2d at 215 (emphasis added).  The *Weiss* court held that because the initial letter stated that the balance may include additional charges, it could be interpreted in two ways: it could mean the balance listed already included the additional charges or the balance might eventually include additional charges.  *Id.* at 217.  Thus, the *Weiss* court held that the letter did not set forth the amount of the debt.  Contrary to the letter referenced above in *Weiss*, FRS' Letter cannot be interpreted in two ways.  FRS' Letter sets forth that $567.30 is the balance. FRS' Letter does not state that the "balance may include" additional charges, but rather states that other charges may apply to the account, which might affect the amount due on any given day.  Thus, FRS' Letter is distinguishable from the letter in *Weiss*.

As the language included by FRS is nearly identical to the safe harbor language approved in *Miller*, no reasonable person could conclude that its language does not properly disclose the balance owing and Plaintiff's claim must be dismissed.

**B.      FRS' Letter Is Not Deceptive Or Misleading.**

As set forth above, FRS' letter provided Plaintiff with the amount of the debt under 15 U.S.C. § 1692g.  As such, the Letter cannot possibly be deceptive or misleading under Section 1692e.

The Letter correctly sets forth that interest or other charges may or may not be applicable to Plaintiff's account.  Without doubt, this is a true statement.  Moreover, it has been held that even the least sophisticated consumer should know when interest applies to an account.  *See Weiss*, 664 F. Supp. 2d at 217 ("even the most unsophisticated consumer would understand that credit card debt accrues interest").

Accordingly, as FRS provided Plaintiff with the balance owing and its language complied with the FDCPA, it was not deceptive or misleading and Plaintiff's claims should be dismissed.

**C.      Plaintiff's Claim Is The Result "Of An Ingenious Misreading."**

Plaintiff's claim is nothing more than an attempt by her counsel to extend the reach of the FDCPA to irrational levels.  As the Seventh Circuit has succinctly stated, "The Act [FDCPA] is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it.  The Act protects the unsophisticated debtor, but not the irrational one." *White v. Goodman,* 200 F.3d 1016, 1020 (7th Cir. 2000).  Such "fantastic conjecture" by Plaintiff's counsel is insufficient to state a claim (*Taylor v. Cavalry Investment, LLC*, 365 F.3d 572, 574-75 (7th Cir. 2004)) as even "an unsophisticated consumer, [is] able to make basic logical deductions and inferences and to not interpret collection letters in a bizarre or idiosyncratic fashion," as alleged by Plaintiff and his counsel in the present matter. *Olson v. Risk*

*Management Alternatives, Inc.* 366 F. 3d 509, 513 (7th Cir. 2004) (internal quotation marks omitted).

The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors and to protect consumers from debt collection abuses. *See generally* 15 U.S.C. § 1692. However, the FDCPA was not enacted to provide a windfall to those who do not experience any abusive behavior. *Dewey v. Associated Collectors, Inc.*, 927 F. Supp. 1172, 1174 (W.D. Wis. 1996). Moreover, bizarre and idiosyncratic interpretations of the FDCPA or interpretations that provide a senseless result must be disregarded by the Court. *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414 (7th Cir. 2005); *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005).

As courts have noticed, the FDCPA is subject to abuses by consumers and their attorneys, which is illustrated in the following quote[4]:

> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id.* Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.
>
> The statute need not be applied in this manner; and indeed, this Circuit has recognized that courts should not countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of

---

[4]     Defendant notes that Plaintiff's counsel's prior firm was counsel for the plaintiff in the matter from which this quote was taken.

being led astray. In *Russell v. Equifax A.R.S.*, one of the most often quoted opinions on the "least sophisticated consumer" standard, the Circuit emphasized that "the test is how the least sophisticated consumer-one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer-understands the notice he or she receives." *Russell*, 74 F.3d at 34. This understanding of the least sophisticated consumer standard points away from closely parsing a debt collection letter like a municipal bond offering and towards a common sense appraisal of the letter.

It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and—rather than simply pay what he owes—repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. State of Ind.*, 338 U.S. 49, 52, 69 S.Ct. 1347, 1349, 93 L.Ed. 1801 (1949).

*Jacobson v. Healthcare Financial Services, Inc.*, 434 F. Supp. 2d 133, 138-39 (E.D.N.Y. 2006); *see also Federal Home Loan Mortgage Corp. v. Lerner, Sampson, Rothfuss, L.P.A.*, 503 F.3d 504 (6th Cir. 2007) (*quoting Jacobson*).

The letter at issue in this matter is of the type referenced by the court in *Jacobson*, considering that FRS' letter largely follows the *Miller* safe-harbor language, but we are to believe that Plaintiff received the letter and exclaimed, "This clearly runs afoul of the FDCPA!" and—rather than simply pay what she owed—repaired to her lawyer's office to vindicate a perceived "wrong." Regardless of how it occurred, Plaintiff's counsel's misreading of FRS' Letter in an attempt to create a viable claim under the FDCPA is inappropriate. The claims in the instant matter must be dismissed.

**<u>CONCLUSION</u>**

Based on the foregoing arguments, this Court should dismiss Plaintiff's claims against

FRS pursuant to Fed. R. Civ. 12(b)(6).

Dated: Valhalla, New York
November 8, 2010

<div style="margin-left:auto;width:50%">

_____/s/  Sergio Alves_____

Scott A. Schechter
Sergio Alves
KAUFMAN BORGEEST & RYAN LLP
Attorneys for Defendant
FINANCIAL RECOVERY SERVICES, INC.
200 Summit Lake Drive
Valhalla, New York 10595
Tel. (914) 449-1000
Fax (914) 449-1100
E-mail: sschechter@kbrlaw.com
E-mail: salves@kbrlaw.com

</div>