UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                          :

SANDRA W. BEAUCHAMP,
individually and on behalf of a class,    :

                          :

             **Plaintiff,**    :
         - against -         :

                          :

FINANCIAL RECOVERY SERVICES,  :
INC.,
             **Defendant.**    :
-------------------------------------------------- X



       <u>**OPINION AND ORDER**</u>

       **10 Civ. 4864 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.     INTRODUCTION

        Sandra W. Beauchamp brings this putative class action against

Financial Recovery Services, Inc. ("FRS"), alleging violations of sections 1692e,

1692e(10), 1692g(a)(1), and 1692e(5) of the Fair Debt Collection Practices Act

("FDCPA").[1]  FRS has moved to dismiss all of Beauchamp's claims.  For the

reasons discussed below, FRS's motion is denied.

## II.     BACKGROUND

        FRS is a debt collector as defined by the FDCPA[2] and Beauchamp is a

---

[1]      *See* 15 U.S.C. § 1692.

[2]      *See id.* § 1692(a)(6); Amended Complaint ("Am. Compl.") ¶ 18.

consumer.[3]  Beauchamp alleges that on or about April 28, 2010, FRS sent her a

debt collection notice (the "Letter") seeking to collect a debt she had purportedly

incurred to HSBC.[4]  The Letter recites the "BALANCE" as $567.30 and then states

in relevant part:

> AS OF THE DATE OF THIS LETTER, YOU OWE
> 567.30.  INTEREST, LATE CHARGES, AND OTHER
> CHARGES MAY OR MAY NOT BE APPLICABLE TO
> THIS ACCOUNT.  IF SOME OR ALL OF THESE ARE
> APPLICABLE TO YOUR ACCOUNT, THEY MAY
> VARY FROM DAY TO DAY AND THUS THE
> AMOUNT DUE ON THE DAY YOU PAY MAY BE
> GREATER.  HENCE, IF YOU PAY THE AMOUNT
> SHOWN ABOVE, AN ADJUSTMENT MAY BE
> NECESSARY AFTER WE RECEIVE YOUR CHECK IN
> WHICH EVENT WE WILL INFORM YOU BEFORE
> DEPOSITING THE CHECK FOR COLLECTION.[5]

Beauchamp alleges "[o]n information and belief" that the statements

in the Letter following the recitation of the balance are false, deceptive and

misleading because FRS does not add any interest, late charges, or any other

charges to the amount of debt it seeks to collect from any consumer.[6]  Beauchamp

---

[3]     See 15 U.S.C. § 1692(a)(3); Am. Compl. ¶ 15.

[4]     See Am. Compl. ¶¶ 11, 19.

[5]     FRS Letter, Ex. A to Am. Compl.

[6]     Am. Compl. ¶¶ 26-28, 32-35.  Beauchamp also claims that FRS is not
"legally or contractually permitted" to add these amounts. See *id.* ¶¶ 29-30;
Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss

further alleges that FRS never seeks to collect any additional amount after a consumer has paid the initially demanded balance in full.[7]   Finally, Beauchamp alleges that FRS intended the Letter to falsely suggest to consumers that immediate payment of their balances to FRS would benefit them financially.[8]

## III.   APPLICABLE LAW

### A.   Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true"[9] and "draw all reasonable inferences in the plaintiff's favor."[10]   On the other hand, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[11]   To survive a motion to dismiss, therefore, the allegations in the complaint must meet a

---

("Pl. Mem.") at 4, 7.

[7]   *See* Am. Compl. ¶¶ 33-35.

[8]   *See id.* ¶ 40; Pl. Mem. at 4-5.

[9]   *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949-50 (2009)).

[10]   *Ofori Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[11]   *Iqbal*, 129 S. Ct. at 1949.

standard of "plausibility."[12]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]  Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[14]

The plaintiff in support of her claim may allege "upon information and belief" facts that are "peculiarly within the possession and control of the defendant."[15]  Conversely, the plaintiff should not allege upon information and belief matters that are presumptively within her personal knowledge, unless she rebuts the presumption.[16]  Such matters include "'matters of public record or matters generally known in the community . . . inasmuch as everyone is held to be conversant with them.'"[17]

---

[12]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  *Accord Iqbal*, 129 S. Ct. at 1949.

[13]     *Iqbal*, 129 S. Ct. at 1949 (quotation marks and citation omitted).

[14]     *Id.* (quotation marks omitted).

[15]     *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

[16]     *See Sanders v. Grenadier Realty, Inc.*, 367 F. App'x. 173, 177 n.2 (2d Cir. 2010).

[17]     *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224, at 300-01 (3d ed. 2004)).

-4-

## B.   FDCPA

### 1.   Overview

In the Second Circuit, the question of whether a debt collector's conduct violates the FDCPA is determined objectively from the viewpoint of the "least sophisticated consumer."[18]  The purpose of the least sophisticated consumer standard is to protect "the gullible as well as the shrewd."[19]  In applying this standard, the court must bear in mind the FDCPA's "dual purpose" of (1) protecting consumers against deceptive debt collection practices and (2) protecting debt collectors from unreasonable constructions of their communications.[20]  Thus, the FDCPA does not aid consumers whose claims are based on "bizarre or

---

[18]     *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008).  Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss. *See generally* Christian Stueben, *Judge or Jury? Determining Deception or Misrepresentation Under the Fair Debt Collection Practices Act*, 78 Fordham L. Rev. 3107, 3133 n. 236, 3135-37 (2010) (surveying cases and concluding that breaches of the least sophisticated consumer standard in the Second Circuit are more often treated as questions of law than fact under section 1692g and always treated as questions of law under section 1692e). Because Beauchamp does not argue to the contrary, I will treat the issue as a question of law.

[19]     *Jacobson*, 516 F.3d at 90.

[20]     *Id.*

idiosyncratic interpretations of collection notices."[21]

### 2.    Section 1692e's General Prohibition and Section 1692e(10)

While section 1692d of the FDCPA enumerates a number of actions that are expressly forbidden, section 1692e bars the general use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt."[22] This includes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[23] A validation notice is deceptive, and thus violates section 1692e(10), "when it can be reasonably read to have two or more different meanings, one of which is inaccurate."[24] When a statement is susceptible of only one reasonable interpretation, the court should determine whether that interpretation is false in violation of section 1692e(10), ignoring any unreasonable interpretations.[25]

### 3.    Section 1692g of the FDCPA

---

[21]    *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993).

[22]    15 U.S.C. §§ 1692d, 1692e.

[23]    *Id.* § 1692e(10).

[24]    *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).

[25]    *See, e.g., Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 191 (S.D.N.Y. 2009) (rejecting plaintiff's allegation that debtor's statement was false because plaintiff's "interpretation [was] manifestly illogical").

The FDCPA requires that a debt collector provide the consumer with a validation notice when collecting on consumer debt.[26]  The notice must state "the amount of the debt," the name of the creditor, a statement that a debt will be assumed to be valid unless disputed by the consumer within thirty days from receipt of the notice, and an offer to verify the debt and provide the name and address of the creditor if the consumer sends a written request for such information.[27]  Even if the notice contains all the information required by the FDPCA, it still violates section 1692g if it "is overshadowed or contradicted by other language in communications to the debtor."[28]  A communication "overshadows or contradicts the validation notice 'if it would make the least sophisticated consumer uncertain as to her rights.'"[29]

### 4.    Section 1692e(5) of the FDCPA

Section 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."[30]  In determining whether a communication constitutes a "threat" in violation of the statute, courts ask whether

---

[26]    *See* 15 U.S.C. § 1692g.

[27]    *Id.* § 1692g(a).

[28]    *Jacobson*, 516 F.3d at 90.

[29]    *Id.* (quoting *Russell*, 74 F.3d at 35).

[30]    15 U.S.C. § 1692e(5).

"the least sophisticated consumer may reasonably conclude [it] is a threat."[31]

## IV.  DISCUSSION

### A.    False Statements Under the FDCPA

Beauchamp asserts that the Letter contains false representations because it suggests, contrary to FRS's actual practice, that interest or other charges may be added to the consumer's stated balance.  According to Beauchamp, the debts FRS seeks to collect "***never*** vary from the date of issuance" and FRS "***never*** attempts to 'contact' consumers or makes adjustments after it receives a check from a consumer sent in response to an initial letter."[32]  Assuming that Beauchamp's allegations are true, as I must on a motion to dismiss, I conclude that the statements in the Letter may mislead the least sophisticated consumer about FRS's debt collection practices.

FRS argues that because the Letter provides only that the outstanding balance "may" change, it is necessarily accurate, whatever FRS's ultimate debt collection practices.[33]  However, the least sophisticated consumer standard is not

---

[31]    *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 135 (E.D.N.Y. 2007). *Accord Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).

[32]    Pl. Mem. at 7.  *Accord* Am. Compl. ¶¶ 21-36.

[33]    Defendant's Reply Memorandum in Further Support of Its Motion to Dismiss ("Def. Rep.") at 2 (emphasis added).

concerned with the literal accuracy of a statement, but rather, with the *impression* that it may reasonably leave upon a consumer. Here, a consumer reading the Letter could believe that FRS does, at times, add interest or other charges to the amounts it seeks to collect. If FRS never increases the amount owed beyond that stated in the Letter, as Beauchamp contends, then the consumer will in fact have been misled.[34] Because it is plausible, based on the Amended Complaint, that FRS's debt collection practices differ from the representations in the Letter, Beauchamp's allegations are sufficient to support her claims at this stage of the litigation.[35]

---

[34]    Alternatively, even if FRS does occasionally increase a consumer's balance, it is plausible that FRS would not increase *Beauchamp*'s balance because HSBC (Beauchamp's original creditor) may only have authorized FRS to collect the initial balance. *See, e.g., Chuway v. National Action Fin. Servs., Inc.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (allowing FDCPA suit to proceed against debt collector for suggesting that plaintiff's balance may increase where the creditor had only authorized collection of the initial balance).

[35]    Because these allegations concern facts "peculiarly within the possession and control of the defendant," Beauchamp does not need to have actual knowledge of their veracity to withstand a motion to dismiss. *Arista Records*, 604 F.3d at 120 (quotation marks and citation omitted). *Accord Puglisi v. Debt Recovery Solutions, LLC*, No. 08 Civ. 5024, 2010 WL 376628, at *4-5 (E.D.N.Y. Jan. 26, 2010) (denying debt collector's motion to dismiss based on plaintiff's allegation "upon information and belief" that he engaged in a specific FDCPA violation).
        Although fraud claims are subject to Rule 9(b)'s heightened pleading standard, courts in this circuit generally assess FDCPA claims under Rule 8's general pleading standard and FRS concedes that it is appropriate to do so here. *See, e.g., Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 Civ. 03760, 2011 WL 347222, at *2 (S.D.N.Y. Feb. 1, 2011). *See also* Defendant's Memorandum of Law in Support of Its Motion to Dismiss ("Def. Mem.") at 6-8.

**B.    Disclosure of the Amount of Debt**

Beauchamp argues that the Letter fails to accurately state the balance

of the debt, as required by the FDCPA.[36]  Because the Letter provides that the

outstanding balance may increase, the least sophisticated consumer may reasonably

conclude that she must pay the balance stated in the Letter immediately or possibly

owe a larger amount.  Accordingly, in violation of section 1692g, the Letter may

make "'the least sophisticated consumer uncertain as to her rights'" and leave her

confused about the total amount she owes.[37]

FRS principally (albeit unavailingly) relies on two cases in arguing

that it complied with its obligation under the FDCPA to disclose the amount of the

debt to be collected.   *First*, FRS notes that its Letter mirrors the safe harbor

language designed by the Seventh Circuit in *Miller v. McCalla* to alert consumers

when debt collectors expect to add interest or other charges to the debtor's

balance.[38]  However, the Letter cannot be saved by the safe harbor language if, as

Beauchamp alleges, FRS never charges the debtor additional interest or fees.[39]

---

[36]     *See* Am. Compl. ¶¶ 38-39.  *See also* 15 U.S.C. § 1692g(a)(1).

[37]     *Jacobson*, 516 F.3d at 90 (quoting *Russell*, 74 F.3d at 35).

[38]     214 F.3d 872 (7th Cir. 2000).

[39]     As explained by the very court that crafted the safe harbor language at
issue,

    [i]f the debt collector is trying to collect only the amount

*Second*, FRS points out that, as a defendant in *Brill v. Financial Recovery Services, Inc.*,[40] it successfully attained dismissal of a claim based on an identical validation letter.[41] Unlike Beauchamp, however, the plaintiff in *Brill* did not allege that FRS never increases the balance stated in the validation letter, thereby leaving FRS protected by the *Miller* safe harbor.[42]  Because FRS cannot invoke such protection here, Beauchamp has sufficiently pled a disclosure violation to withstand a motion to dismiss.

### 3.    False Threats Under the FDCPA

A debt collector's false suggestion that it might take a certain action constitutes an actionable threat under 1692e(5).  Beauchamp alleges that the Letter

---

> due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed-and stopping there, without talk of the "current" balance.  If, instead, the debt collector is trying to collect the listed balance plus the interest running on it or other charges, he should use the safe-harbor language of *Miller*.

*Chuway*, 362 F.3d at 947-48.

[40]    No. 10 Civ. 3121 (D. Neb. Nov. 10, 2010) (unpublished opinion) (attached as Ex. 1 to Def. Rep.).

[41]    *See* Def. Rep. at 3.

[42]    Brill only alleged that the FRS Letter failed to "specify whether interest, late charges, or other fees had been, or would be, added to the debt amount." *Brill* at 1. *See id.* at 10.

suggested that FRS might increase the amount owed, even though FRS had no intention of ever doing so.[43]   Indeed, Beauchamp asserts that FRS was not "legally or contractually permitted" to add to the balance stated in the Letter.[44]   Accepting Beauchamp's allegations as true, the Letter constitutes a threat to take an action that FRS did not intend to take in violation of the FDCPA.  The Letter's conditional language — *i.e.*, that certain amounts "may" be added — does not counteract its potentially threatening appearance to the least sophisticated consumer.[45]

## V.   CONCLUSION

For the foregoing reasons, FRS's motion to dismiss Beauchamp's claims under sections 1692e, 1692e(10), 1692g(a)(1), and 1692e(5) of the FDCPA is denied.  The Clerk of the Court is directed to close this motion [Docket No. 13]. A conference is scheduled for March 23, 2011 at 5:00 p.m.

---

[43]   *See* Am. Compl. ¶¶ 41-42.

[44]   *Id.* ¶¶ 29-30.

[45]   *See, e.g., Fainbrun v. Southwest Credit Systems, L.P.*, 246 F.R.D. 128, 129-32 (E.DN.Y. 2007) (finding debt collector's statement that "[l]ate payments, missed payments, or other defaults *may* be reflected on your credit report" to be a false threat where it was not debt collector's practice to report any late or missed payments or other defaults to credit agencies) (emphasis added).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 11, 2011

**-Appearances-**

**For Plaintiff:**

Abraham Kleinman, Esq.
Kleinman LLC
626 RXR Plaza
Uniondale, NY 11556
(516) 522-2621

**For Defendant:**

Scott A. Schechter, Esq.
Sergio Alves, Esq.
Kaufman Borgeest & Ryan LLP
200 Summit Lake Drive
Valhalla, NY 10595
(914) 449-10000